Robert P. **HILBERG**, a Minor, By and Through his father and next-of-friend, Robert F. **HILBERG**; and Robert F. Hilberg, Plaintiffs–Appellants,

v.

F.W. **WOOLWORTH CO.**, a New York corporation; Savage Industries, Inc., a Massachusetts corporation; and William Jack Myers, Defendants–Appellees.

No. 86CA0109.

Colorado Court of Appeals, Div. II.

March 24, 1988.

Rehearing Denied April 21, 1988.

Certiorari Denied Sept. 12, 1988.

Williams, Trine, Greenstein & Griffith, P.C., Mari C. Bush, William A. Trine, Boulder, for plaintiffs-appellants.

Cooper & Kelley, P.C., Richard B. Caschette, Denver, for defendants-appellees F.W. Woolworth Co. and William Jack Myers.

Long & Jaudon, P.C., David B. Higgins, Denver, Powell, Goldstein, Frazer & Murphy, Daryll Love, Atlanta, Ga., for defendant-appellee Savage Industries, Inc.

SMITH, Judge.

Robert P. Hilberg, a minor, and Robert F. Hilberg, his father, appeal from summary judgments denying their claims of negligence per se, negligent entrustment and negligent failure to exercise due care with respect to defendants F.W. Woolworth Co. and William Jack Myers and their claims of negligent failure to exercise due care and strict liability in tort against defendant Savage Industries, Inc. We affirm.

Savage was the manufacturer of a .22 caliber rifle that was sold by a Woolworth employee to a Mr. Johnson for use by Johnson's fourteen-year-old son, Jeff. Plaintiff, Robert P. Hilberg, a minor child, was injured when he was accidentally shot by his friend, Jeff Johnson, with the .22 rifle which both thought was unloaded. Defendant Myers was the supervisor of the Woolworth employee who had made the sale. It is undisputed that the rifle which caused the injury did not malfunction in any way.

There were no disputed issues of material fact in this case which relate to the questions of liability. Thus, summary judgment was the appropriate way to determine whether plaintiffs were entitled to recover damages.

## I.

The Hilbergs first contend that Woolworth's sale of the rifle to Mr. Johnson, for use by his minor son, constituted negligence per se. They argue that the sale constituted "furnishing" or "delivery" of a firearm by Woolworth and Myers to a minor in violation of the provisions of the Gun Control Act of 1968, 18 U.S.C. § 921, et seq., and provisions of the Thornton Municipal Code. We disagree.

Both the city ordinance and the Gun Control Act make it unlawful to sell, deliver, or furnish a firearm "directly" to a minor under the age of eighteen years. However, since Woolworth's employee sold the rifle to Mr. Johnson, an adult, it did not directly transfer it to a minor, and thus, the central element of negligence per se, that there be a violation of a statute which prescribes, or proscribes, specific and detailed conduct on the part of the alleged tortfeasor is not met here. *See Sego v. Mains*, 578 P.2d 1069 (Colo.App.1978). Accordingly, there was, as a matter of law, no negligence per se.

## II.

Next, the Hilbergs argue that Woolworth and its agents were guilty of negligent entrustment in selling the rifle because they knew that Mr. Johnson intended to give it to his minor son as a Christmas present. The undisputed facts, however, disclose that these defendants had no specific knowledge concerning the competence, maturity, judgment or propensity for carelessness or recklessness of either Mr. Johnson or his son, nor did they retain any ability to control the use of the rifle after the sale had been completed. We therefore reject this argument.

Although negligent entrustment is a viable theory upon which liability may be predicated in an appropriate case, the supplier of the instrumentality entrusted must have actual knowledge either of the user's propensity to misuse the instrumentality or of facts from which such knowledge could reasonably be inferred. *Baker v. Bratrsovsky*, 689 P.2d 722 (Colo.App. 1984). Such supplier must also have some ability subsequently to control the user or the manner in which the instrumentality is used. *Hasegawa v. Day*, 684 P.2d 936 (Colo.App.1983).

Here, there is no evidence that defendants had any knowledge of Mr. Johnson's supervision habits, shortcomings, or qualities as a parent. Absent knowledge to the contrary, defendants could reasonably expect that, although the gun was purchased for use by a fourteen-year-old, the parents would exercise reasonable and adequate supervision of the minor's use of the rifle and prevent its use when the minor was unattended by an adult. Furthermore, the Hilbergs have failed to allege any facts that would establish that any of the defendants retained any right of control once the sale was completed. Thus, the necessary elements of negligent entrustment are not present. *Butcher v. Cordova*, 728 P.2d 388 (Colo.App.1986). *Hasegawa v. Day, supra.* Furthermore, in this case, because of the outright purchase and sale, there was no entrustment, much less a negligent one.

### III.

The Hilbergs next allege, under a general negligence theory, that Savage failed to exercise reasonable care in the promotion, marketing, and distribution of its .22 rifle for the use, possession, and control of minors. They also argue that Woolworth knew, or should have known, that children might use this particular model rifle. Therefore, the Hilbergs argue, reasonable and due care should have been taken, particularly when the employees who sold the firearm knew, or had reason to know, that Mr. Johnson's purchase of the rifle was as a Christmas present for his minor son.

■ Whether a defendant owes a duty of care to prevent injury to others is a threshold question of law. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo. 1986). In determining whether the law should impose a duty on a defendant to prevent a particular harm to a plaintiff, the court must consider several factors including the extent, foreseeability, and likelihood of injury, the social utility of the actor's conduct, the magnitude of the burden placed on the defendant to guard against the injury, and the consequences of placing that burden on defendant. *Justus v. Jefferson County School District R–1*, 683 P.2d 805 (Colo.App.1984), *rev'd in part on other grounds*, 725 P.2d 767 (Colo. 1986).

In addition to these factors, other considerations may also be relevant, depending on the circumstances of the particular case. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987). No one factor is controlling, and the question of whether a duty should be imposed is essentially one of fairness under contemporary standards, as foreseeability includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding his or her practical conduct. *Taco Bell, Inc. v. Lannon, supra.*

■ Generally, if a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another there arises a duty to avoid such harm; however, there is no duty to prevent a third person from harming another absent a special relationship. *Leake v. Cain*, 720 P.2d 152 (Colo.1986).

■ In order for a special relationship to arise, defendant must voluntarily assume a duty to plaintiffs by acting affirmatively to induce reliance by creating a peril, or by changing the nature of an existing risk. *Whitcomb v. City & County of Denver*, 731 P.2d 749 (Colo.App.1986).

■ In determining whether a specific defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between active misconduct which works positive injury to others (misfeasance) and passive inaction, or a failure to take steps to protect one from harm (nonfeasance). *University of Denver v. Whitlock*, 744 P.2d 54 (Colo.1987). For example, in *Whitlock*, the court concluded that the University of Denver did not owe a duty of care to Whitlock, who was a student at the University and a member of a fraternity, to take measures to protect him against injury resulting from his use of a trampoline under unsafe conditions when the trampoline was owned by the fraternity and was located on the front lawn of the

house that the fraternity leased from the University.

Application of these principles to the undisputed facts lead us to conclude that the trial court was correct, as a matter of law, in ruling that there was no duty, the breach of which could result in liability, under general negligence law.

## IV.

The Hilbergs' remaining arguments fall within the realm of products liability. They might be summed up in two questions. Does the manufacture, distribution, and/or sale of firearms constitute the promotion and conduct of such an inherently dangerous activity as to impose liability for injury or death without fault, *i.e.*, strict liability? Or correlatively, does a manufacturer, or seller, of a firearm owe a duty, prior to sale, to ascertain whether the product may be used by a child, and if so, to take further precautions or provide further instructions to the consumer?

In considering these questions it is necessary to look at them in light of our recent cases as well as against the background of our constitutional and statutory law.

The right to bear arms is guaranteed by the Constitution of the United States, *U.S. Const.* amend. II and the Colorado Constitution, *Co. Const.* art. II, § 13, subject to the valid exercise of police power. The Gun Control Act, *supra*, and local ordinances only prohibit the sale of firearms directly to minors. Minors are allowed to use guns under certain circumstances and under certain conditions. *See, e.g.*, § 33–6–107(4), C.R.S. (1987 Cum.Supp.).

Subsequent to the events which are the subject of this lawsuit, in 1986, our General Assembly enacted a statute declaring Colorado's public policy relative to the issue of strict product liability arising by virtue of the inherent risks associated with firearms:

"[I]t shall be the policy of this state that product liability for injury, damage, or death caused by the discharge of a firearm or ammunition shall be based *only* upon an actual defect in the design or manufacture of such firearm or ammunition and not upon the inherent potential

of a firearm or ammunition to cause injury, damage, or death when discharged." Section 13–21–501, C.R.S. (1987 Repl.Vol. 6A). (emphasis supplied)

Furthermore:

"The manufacturer's, importer's, or distributor's placement of a firearm or ammunition in the stream of commerce, even if such placement is found to be foreseeable, shall not be conduct deemed sufficient to constitute the proximate cause of injury, damage, or death resulting from a third party's use of the product." Section 13–21–504(2), C.R.S. (1987 Repl.Vol. 6A)

In 1975 the Colorado Supreme Court adopted the doctrine of strict products liability as set forth in the *Restatement (Second) of Torts* § 402(a) (1966). *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975). Under that section of the *Restatement*, one who sells a product, the defective condition of which makes it unreasonably dangerous to the user or consumer, is liable for the physical harm or damage caused thereby.

Admittedly here, there was no defect in design or manufacture. The rifle performed exactly as it, and all other firearms, are designed to perform. Upon the pulling of a trigger, a bullet is propelled by the explosive charge in the cartridge out of the barrel into the object at which the firearm is pointed. Thus, plaintiff's only argument is that the failure adequately to warn concerning the experience, maturity, and knowledge of potential users rendered the firearm defective and unreasonably dangerous.

Under the "consumer expectation" test for determining what is "unreasonably dangerous," even older children possess the ordinary knowledge common to the community concerning the characteristics of a rifle, its function, and generally how it operates.

Under the "risk analysis" test adopted in 1987 by a divided court in *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240 (Colo.1987), the same result obtains. This is particularly true in light of the recent

statutorily announced public policy of Colorado which defines the atmosphere in which this case must be decided. Questions concerning the social or societal utility of firearms and how and by whom they may be possessed and used are major public policy questions which properly reside with constitutional assemblies and legislative bodies. In light of the existing legislative statement of policy, we hold that here there was no defective product which was rendered unreasonably dangerous by any act, or failure to act, by any of the defendants.

Courts in other jurisdictions which have addressed this issue have reached the same result under similar circumstances. *See Richman v. Charter Arms Corp.*, 571 F.Supp. 192 (E.D.La.1983) the court addressed the risks involved in the marketing of handguns and found it determinative that the knowledge of the hazards of firearms is known by all Americans at an early age. *See e.g. Bookout v. Victor Comptometer Corp.*, 40 Colo.App. 417, 576 P.2d 197 (1978) (the potential for danger in a BB gun is readily apparent). It concluded that the risks involved in the marketing of handguns are not any greater than a reasonable consumer would expect. Every reasonable consumer that purchases a gun knows that it is a potentially dangerous weapon. It is unreasonable to say that harm would have been averted had the manufacturer, or seller, attached adequate warnings as to how the product can be used and abused since such warnings are not likely to alter a consumer's purchase or handling of firearms. *Richman v. Charter Arms Corp., supra.*

*Richman* was consolidated on appeal with another case and was affirmed in *Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir.1985). The appellate court held that plaintiffs could not recover under Louisiana product liability law or on a theory of ultra hazardous activities, whether the risk utility analysis or consumer expectation test was applied since the handguns had functioned precisely as they were designed to and because the dangerousness was obvious and well-known to the purchasers. Thus, summary judgments in favor of the manufacturers and sellers were appropriate.

Similarly, in *Patterson v. Gesellschaft*, 608 F.Supp. 1206 (D.C.Tex.1985) plaintiff brought a products liability action against the seller and manufacturer of a .38 caliber revolver. He argued that although the gun was not defective, did not malfunction, and did not lack appropriate safety devices, liability for the death which resulted should be predicated on the fact that the risks in the use of a handgun greatly outweigh the benefits and on a theory of defect in distribution. However, the court found that the gun did exactly what it was designed to do: fire a bullet with deadly force when the trigger was intentionally pulled. It concluded that the claim brought was a misuse of tort law, baseless, and a tortured extension of product liability principles. Summary judgment in favor of the seller and manufacturer was granted over what the court viewed as an obvious attempt to usurp legislative prerogative by the imposition of a judicial ban on handguns.

As here, the plaintiff in *Patterson* argued for product liability based on the application of the risk-utility test to the product whether or not defective. The court concluded that, under Texas law, there can be no product liability unless the product has a defect and noted that the risk utility test incorporates this essential concept together with the idea that the defect in such a product can be remedied. The court cautioned that the consequence of expanding products liability law to the extent argued by plaintiff would result in a duty arising merely because a product is the factual cause of a particular injury. If there is such a duty, an action could then conceivably be brought against the manufacturer of matches for injuries from a fire caused by such matches, regardless of the intervening circumstances. Similarly, an action could be brought against a manufacturer of automobiles for any and all damages produced by a car involved in an accident. *Patterson v. Gesellschaft, supra.* It was significant that plaintiff there failed to offer any alternatives for the safer design of guns.

*DeRosa v. Remington Arms Co. Inc.,* 509 F.Supp. 762 (E.D.N.Y.1981) is instructive on the issue of the magnitude of the burden to guard against injury and the consequences of placing that burden upon a defendant. In *DeRosa,* the court held that although harm from reasonably foreseeable risks must be prevented, a manufacturer is not an insurer with respect to its product, nor can it protect, by its design choices, against all conceivable misuses and thereby make a product absolutely safe or accident-proof. The court noted that a shotgun, as designed, is not unreasonably dangerous for its intended use.

Based on the foregoing analysis, we hold that the trial court was correct in rejecting each of plaintiffs' claims against F.W. Woolworth Co., Savage Industries, Inc., and William Jack Myers, the Woolworth Company employee, on the basis that, under the undisputed facts, they had not demonstrated any right to recover.

Judgments affirmed.

BABCOCK and PLANK, JJ., concur.