23CA1382 Creative v LeRoux 11-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1382
Adams County District Court No. 22CV30165
Honorable Teri L. Vasquez, Judge

Creative Acres, Inc., and Maxine Mager,

Plaintiffs-Appellants,

v.

LeRoux Law, LLC; L. Paul LeRoux II; Geigle Law Firm, LLC; Anna Geigle; Phillip Geigle; Lampert & Walsh, LLC; Brian J. Lampert; and Sean Walsh,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
Kuhn and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

Paul Gordon PLLC, Paul Gordon, Denver, Colorado, for Plaintiffs-Appellants

Childs McCune LLC, Daniel R. McCune, Corinne C. Miller, Denver, Colorado, for Defendants-Appellees LeRoux Law, LLC, and L. Paul LeRoux II

McConnel Van Pelt, LLC, Traci L. Van Pelt, Denver, Colorado, for Defendants-Appellees Geigle Law Firm, LLC, Anna Geigle, and Phillip Geigle

Messner Reeves LLP, Douglas C. Wolanske, Matthew W. George, Denver, Colorado, for Defendants-Appellees Lampert & Walsh, LLC, Brian J. Lampert, and Sean Walsh

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiffs, Creative Acres, Inc., and Maxine Mager (jointly, the neighbors), appeal the district court's judgment dismissing the neighbors' malpractice lawsuit against defendants, LeRoux Law, LLC, and L. Paul LeRoux II (jointly, the LeRoux lawyers); Geigle Law Firm, LLC, Anna Geigle, and Phillip Geigle (collectively, the Geigle lawyers); and Lampert & Walsh, LLC, Brian J. Lampert, and Sean Walsh (collectively, the Lampert lawyers). We reverse and remand for further proceedings.

## I.     Background

¶ 2     The neighbors' malpractice action arose out of the lawyers (collectively, the defendant lawyers) representing the neighbors in a lawsuit for damages resulting from a property fire (the fire action). Due to the complicated procedural history, we first outline the relevant background in the fire action and then discuss the malpractice action.

## A. The Fire Action

### 1. The LeRoux Lawyers and Geigle Lawyers' Representation of the Neighbors

¶ 3    Creative Acres owned a parcel of land on which Mager resided. James Hazlet and Monte Hazlet owned several parcels of land surrounding Creative Acres' property.

¶ 4    In 2018, a fire started on one of the parcels owned by James[1] and Monte and spread onto the neighbors' property. In March 2019, the neighbors filed a complaint (initial complaint) in district court (the fire action court), Adams County Case No. 19CV30458, against James, Monte, and others for damages resulting from the fire. The initial complaint alleged in part that James and Monte had negligently permitted their son, Robert Hazlet, to operate a shooting range on their property, which in turn caused a fire that spread onto the neighbors' property causing the neighbors various

___

[1] Because James Hazlet, Monte Hazlet, and Robert Hazlet share a last name, to avoid confusion, we will refer to them by their first names. We intend no disrespect in doing so.

damages.[2]  The LeRoux and Geigle lawyers simultaneously represented the neighbors at the outset of the fire action.

¶ 5     Robert died in February 2019, one month before the neighbors filed the initial complaint.  The LeRoux and Geigle lawyers hadn't named Robert's estate as a party to the initial complaint, but they amended the complaint in January 2020 to name Robert's estate as a defendant (amended complaint).  Before amending the complaint, the LeRoux and Geigle lawyers asked the probate court to appoint a special administrator on behalf of Robert's estate to allow the fire action to proceed against the estate.  The probate court appointed a special administrator, but the special administrator's authority was limited and didn't include the capacity to be sued on behalf of Robert's estate.  The LeRoux and Geigle lawyers didn't ask the probate court to appoint a personal representative for Robert's estate — a person who could be sued if made a party to the fire

---

[2] The neighbors also asserted claims against several individual users of the gun range, who they alleged contributed to the fire. Those individuals and their actions are not at issue in this appeal.

action[3] — before the one-year time limit to do so expired in February 2020.[4]

¶ 6     In the amended complaint, the LeRoux and Geigle lawyers asserted a claim for direct negligence against James, Monte, and Robert's estate (collectively, the Hazlets), and a claim for vicarious liability against James and Monte.[5]  With respect to the vicarious liability claim, the neighbors alleged that Robert was an agent and employee of James and Monte who was acting "within the scope of his employment and authority" when the events leading to the fire occurred.

¶ 7     In March 2020, Robert's estate, through the special administrator, filed a motion for summary judgment, asserting that

---

[3] *See* § 15-12-804(1)(c), C.R.S. 2025 (requiring claims arising before a decedent's death to be filed against the personal representative for a decedent's estate).

[4] *See* § 15-12-803(1)(a)(III), C.R.S. 2025 (barring claims against a decedent's estate that arose before a decedent's death unless brought within one year after the decedent's death); C.R.C.P. 25(a)(1) ("If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties.  The motion for substitution may be made by any party . . . ."); *see also Sawyer v. Kindred Nursing Ctrs. W., LLC*, 225 P.3d 1161, 1164 (Colo. App. 2009) (a personal representative of a deceased party's estate may be substituted for a deceased party and participate in litigation).

[5] The initial and amended complaints included additional claims for relief against the Hazlets, none of which are at issue in this appeal.

it lacked the capacity to be sued and that a claim against it couldn't proceed without the appointment of a personal representative. That same month, James and Monte filed a motion for summary judgment and judgment on the pleadings, asserting that because they had admitted vicarious liability for Robert's conduct, the neighbors' negligence claim against them couldn't proceed as a matter of law.

¶ 8    The Geigle lawyers and LeRoux lawyers withdrew from representing the neighbors in March and April 2020, respectively, before a response to either motion for summary judgment was submitted.

2.    The Lampert Lawyers' Representation of the Neighbors

¶ 9    In July 2020, the Lampert lawyers entered an appearance on the neighbors' behalf. Later that month, the Lampert lawyers filed a motion asking the fire action court to dismiss the neighbors' claims against Robert's estate. Acknowledging — and agreeing with — the arguments in the special administrator's motion for summary judgment, the Lampert lawyers asked the court to dismiss the neighbors' claims against Robert's estate without prejudice to cure the amended complaint's "procedural deficiencies." The fire action

5

court granted the motion and dismissed Robert's estate from the fire action.

¶ 10     In August 2020, the fire action court granted summary judgment in favor of James and Monte on the neighbors' direct negligence claim. Noting that James and Monte had admitted that Robert was their agent and they were therefore vicariously liable if his actions were found to be negligent, the fire action court determined that James and Monte couldn't also be liable for direct negligence.

¶ 11     Two months later, James and Monte also moved for summary judgment on the neighbors' vicarious liability claim. James and Monte argued that because the neighbors couldn't show that Robert owed the neighbors a legal duty of care, the neighbors couldn't prove that Robert was negligent, and the neighbors' vicarious liability claim against them necessarily failed. James and Monte also argued that the neighbors' allegations only consisted of James and Monte's failures to act, but the neighbors couldn't prove James and Monte owed the neighbors a duty of care because the neighbors hadn't demonstrated the existence of a "special relationship" necessary to support negligence claims based on nonfeasance. The

fire action court agreed that James and Monte didn't owe the neighbors a duty of care and granted the second motion for summary judgment.

¶ 12    James died in October 2020, less than three weeks after the second motion for summary judgment was filed. Monte died in December 2020. The Lampert lawyers didn't timely seek to substitute representatives for James's or Monte's estates as parties to the fire action. The Lampert lawyers withdrew as the neighbors' counsel in October 2021. The fire action court entered a final judgment in June 2022 that dismissed all of the neighbors' claims against the Hazlets with prejudice.

¶ 13    The neighbors filed a notice of appeal in this court seeking review of both of the fire action court's orders granting summary judgment.[6]

---

[6] That appeal, Court of Appeals Case No. 22CA2061, was pending at the same time as the litigation in the malpractice action. A division of this court dismissed the appeal as to the merits without issuing an opinion. *Mager v. Hazlet*, (Colo. App. No. 22CA2061, Nov. 27, 2023) (unpublished order).

## B. The Malpractice Action

### 1. Original Malpractice Complaint

¶ 14 In February 2022, the neighbors filed a legal malpractice action against the defendant lawyers, asserting that they were negligent and failed to act as "reasonably careful" attorneys because they didn't

- timely move for appointment of a personal representative for Robert's estate (as against the LeRoux and Geigle lawyers);

- withdraw the vicarious liability claim against James and Monte (as against all defendant lawyers); or

- timely move for the appointment of personal representatives for James's and Monte's estates (as against the Lampert lawyers).[7]

¶ 15 The Geigle lawyers filed a counterclaim against the neighbors for breach of contract. The Geigle lawyers asserted that between August 2019 and March 2020, the neighbors failed to pay them for

---

[7] The neighbors also alleged that the defendant lawyers negligently failed to timely endorse certain expert witnesses. We deem that issue abandoned because the neighbors haven't raised it on appeal. *Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38 (arguments not raised on appeal are abandoned).

costs and expenses that the Geigle lawyers incurred while representing the neighbors in the fire action, as required by the fee agreement.

¶ 16     The Lampert lawyers moved to dismiss the neighbors' complaint under C.R.C.P. 12(b)(5) and supported the motion with over 200 pages of documents from the fire action, including the initial complaint, amended complaint, and various orders. The Lampert lawyers asserted that the neighbors couldn't prove the case within a case required to prevail in their malpractice action because they couldn't demonstrate that the Hazlets owed them a legal duty of care, such that the neighbors would have prevailed in the fire action "but for" the Lampert lawyers' negligence.

¶ 17     The court agreed with the Lampert lawyers' reasoning and granted the motion to dismiss (first Lampert judgment). The court concluded that neither the Lampert lawyers' failure to timely move for appointment of personal representatives for the Hazlets nor their failure to withdraw the vicarious liability claim against James and Monte caused the neighbors to lose the fire action. Rather, the court reviewed the fire action court's findings and conclusions and determined that the neighbors' direct negligence and vicarious

liability claims would have been dismissed regardless of the Lampert lawyers' alleged malpractice because the fire action court had concluded that the Hazlets didn't owe the neighbors a legal duty.

¶ 18     The neighbors filed a motion for "reconsideration or clarification" of the first Lampert judgment, arguing that the court had relied on the fire action court's "inherently unreliable" findings. Thus, the neighbors sought clarification of whether the court had concluded "that the Hazlets owed no duty to [the neighbors] or, instead, conclude[d] that the [fire action court's] conclusion (right or wrong) was a superseding cause or, further, both."

¶ 19     The court declined to reconsider its judgment and affirmed its finding that the Lampert lawyers' alleged acts of malpractice "were not the proximate cause of [the neighbors'] alleged damages because the [fire action court's] determinations were a superseding cause." The court said,

> Because the underlying court determined that [the neighbors] could not have succeeded on [their negligence] claim as a matter of law even if a personal representative was appointed, the [c]ourt finds that this was a superseding cause of [the neighbors'] alleged damages. As such, [the Lampert lawyers'] failure to move for

> appointment of a personal representative . . .
> did not proximately cause injury to [the
> neighbors] as a matter of law.

### 2. Amended Malpractice Complaint

¶ 20 The court authorized the neighbors to amend their complaint in July 2022 (amended malpractice complaint). The amended malpractice complaint asserted that the defendant lawyers were negligent and breached the applicable standard of care by failing to

- timely seek the appointment of and move for substitution of the personal representatives for each of the Hazlets' estates; or

- preserve for appeal the neighbors' arguments that (1) the Hazlets owed the neighbors a "duty not to set [the neighbors'] property on fire and a duty to prevent fire on the Hazlets' property from spreading [onto] the [neighbors'] property" and (2) the Hazlets' estates were liable for the neighbors' damages.

With respect to the Lampert lawyers, the neighbors argued that the failure to timely substitute representatives for James's and Monte's estates caused the neighbors to lose their appeal of the fire action because they couldn't have "file[d] an appeal against [parties] that were never substituted into the case."

¶ 21    The Lampert lawyers moved to dismiss the neighbors'
amended malpractice complaint under Rule 12(b)(5). As to the
neighbors' appeal-related malpractice allegations, they argued that
(1) the record in the fire action demonstrated that they *had*
preserved the neighbors' arguments related to the Hazlets' duty and
liability; (2) they withdrew "as attorneys of record almost eight
months before judgment entered and therefore could not have
pursued an appeal" on the neighbors' behalf; and (3) the neighbors'
assertion that they couldn't file an appeal because the estates
weren't substituted was an unsubstantiated legal conclusion.

¶ 22    The court granted the Lampert lawyers' motion and dismissed
the neighbors' claims against them (second Lampert judgment). As
relevant here, the court again found that because the Hazlets didn't
owe a legal duty to the neighbors, the Lampert lawyers' failure to
substitute the estates' personal representatives couldn't have
proximately caused any damages the neighbors suffered as a result
of losing the fire action or the subsequent appeal.

¶ 23    Between the court's issuance of the first and second Lampert
judgments, the LeRoux lawyers filed a motion requesting dismissal
under Rule 12(b)(5) or for judgment on the pleadings under Rule

12

12(c). The Geigle lawyers joined the motion, noting that the claims against both attorney groups were identical. The LeRoux and Geigle lawyers argued that because the court had already determined in the first Lampert judgment that the Hazlets didn't owe a legal duty to the neighbors, the attorneys' actions, even if negligent, couldn't have changed the outcome of the fire action. The LeRoux and Geigle lawyers thus argued that the neighbors' malpractice claims failed because the neighbors couldn't prove their case within a case. The court agreed and dismissed the neighbors' malpractice claims against the LeRoux and Geigle lawyers (LeRoux-Geigle judgment).

¶ 24 The neighbors asked the court to reconsider the LeRoux-Geigle judgment, arguing that the court didn't consider the amended malpractice complaint. The court denied the request for reconsideration in a written order that incorporated its legal conclusions from the second Lampert judgment, noting that because the Hazlets didn't owe the neighbors a duty, any failure by the LeRoux and Geigle lawyers to preserve the neighbors'

arguments for appeal would still fail under the case within a case standard for legal malpractice causation.[8]

¶ 25    In August 2023, the court granted the parties' stipulated dismissal of the Geigle lawyers' counterclaim without prejudice (August 2023 judgment).

¶ 26    The neighbors appeal.

## II.    Appellate Jurisdiction

¶ 27    We first consider whether we have jurisdiction to consider the neighbors' appeal. *See Harding Glass Co. v. Jones*, 640 P.2d 1123, 1126 (Colo. 1982). This court only has jurisdiction over appeals from final judgments. § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a). A final judgment is one that "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do except to execute the judgment." *Musick v. Woznicki*, 136 P.3d 244, 249 (Colo. 2006) (citation omitted). We consider the legal effect of

---

[8] This order resolved the last of the substantive motions in the malpractice action. A division of this court dismissed the neighbors' direct appeal of the fire action approximately one week later. *Mager v. Hazlet*, (Colo. App. No. 22CA2061, Nov. 27, 2023) (unpublished order).

an order rather than its form to determine its finality. *Good Life Colo., LLC v. WLCO, LLC*, 2025 COA 8M, ¶ 26.

¶ 28    In a joint motion to dismiss this appeal, the defendant lawyers argue that there is no final, appealable order vesting this court with jurisdiction because (1) the August 2023 judgment dismissed the counterclaim without prejudice, and the counterclaim is subject to the six-year statute of limitations in section 13-80-103.5, C.R.S. 2025, which has not yet run; and (2) the neighbors failed to certify as final judgments any of the orders they are asking us to review. We aren't persuaded.

¶ 29    In their counterclaim, the Geigle lawyers asserted they were entitled to payment of litigation-related costs and expenses incurred under the terms of two fee agreements with the neighbors. The fee agreements stated that the Geigle lawyers would provide the neighbors with periodic billing statements detailing the incurred costs and expenses, which the neighbors were required to pay in full within thirty days of receipt. The agreements contained "examples of such costs and expenses," provided a price range of estimated future costs and expenses, and informed the neighbors that "actual costs may be higher or lower."

15

¶ 30    Section 13-80-101(1)(a), C.R.S. 2025, says that contract claims must be brought within three years after a claim accrues. But section 13-80-103.5(1)(a) contains an exception for claims that seek to "recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action."

¶ 31    In *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995), a division of this court reviewed whether a lawyer's claim for breach of contract based on a fee agreement obligating the lawyer's client to pay $100 per hour for the lawyer's services was subject to section 13-80-101(1)(a)'s three-year statute of limitations or section 13-80-103.5(1)(a)'s six-year statute of limitations. The division concluded that, for purposes of section 13-80-103.5(1)(a), an amount owed is either liquidated or determinable "if the amount due is capable of ascertainment by reference to an agreement or by simple computation." *Rotenberg*, 899 P.2d at 367. The division further concluded that regardless of whether the client contested the reasonableness of the hours expended on his behalf, the amount owed was determinable because the fee agreement set forth the "specific method" for determining what was due. *Id.* at 368. Stated differently, the *Rotenberg* division concluded that a debt is

16

determinable for purposes of section 13-80-103.5(1)(a) if the terms of the agreement governing the debt provide a formula for calculating it.

¶ 32    The defendant lawyers assert that section 13-80-103.5(1)(a)'s six-year statute of limitations applies in this case because the Geigle lawyers' counterclaim was for a "specific, determinable debt." They thus argue that the August 2023 judgment wasn't a final appealable order because "[t]he last invoice submitted to [the neighbors] by the [Geigle lawyers] was on March 26, 2020, with payment due within 30 days . . . . [;] [t]herefore, the statute of limitations does not run until on or about April 25, 2026." We disagree.

¶ 33    Unlike the fee agreement in *Rotenberg*, the Geigle lawyers' fee agreements only gave examples of the *types* of costs and expenses to which the lawyers were entitled, rather than providing a formula for calculating them. Thus, the Geigle lawyers' counterclaim was subject to section 13-80-101(1)(a)'s three-year statute of limitations because it didn't seek to recover a determinable amount of money owed. Accordingly, even assuming April 26, 2020, as the latest possible date on which the Geigle lawyers' breach of contract claim

17

could have accrued, the three-year statute of limitations expired as of April 26, 2023, and the court's August 2023 judgment was therefore final once the court issued it. *SMLL, L.L.C. v. Daly*, 128 P.3d 266, 268 (Colo. App. 2005) (dismissal without prejudice constitutes a final judgment when the applicable statute of limitations period has expired).

¶ 34    We also reject the defendant lawyers' argument that we lack jurisdiction because the neighbors failed to certify under C.R.C.P. 54(b) any of the orders they are asking us to review.

¶ 35    Rule 54(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties . . . .

¶ 36    While the neighbors didn't seek to certify the first Lampert judgment, the second Lampert judgment, or the LeRoux-Geigle

18

judgment, Rule 54(b) didn't require them to.  The malpractice action

didn't become final until August 2023 when the Geigle lawyers'

counterclaim was resolved.  *Kempter v. Hurd*, 713 P.2d 1274, 1278

(Colo. 1986) ("[L]itigation involving multiple claims or multiple

parties is treated as a single action which is not final and

appealable until all of the issues in the litigation are adjudicated.").

¶ 37    Accordingly, we have jurisdiction over this appeal.

### III.    Discussion

¶ 38    The neighbors contend that the court erred by (1) concluding

that they couldn't win the case within a case necessary to prove

causation in their malpractice action because they couldn't

demonstrate that the Hazlets owed them a legal duty;

(2) determining as a matter of law that the neighbors couldn't prove

the causation element of their malpractice claim because the fire

action court's "judicial error" was a superseding cause of the

neighbors' damages; and (3) concluding that any negligence by the

defendant lawyers in failing to join the Hazlets' estates was not the

proximate cause of the neighbors' unsuccessful appeal of the fire

action.

¶ 39    We conclude that the court erroneously reached the merits of the neighbors' malpractice claim by conclusively determining that the neighbors couldn't demonstrate their ability to prevail in the fire action.  During the pleading phase of the proceedings, the neighbors only needed to plausibly allege the causation element of malpractice — which they did, as we discuss below.  Because we reverse on that basis, and because the neighbors' second and third contentions concern the merits of their malpractice claim, we decline to address them.

### A.    Standard of Review and Applicable Law

¶ 40    "We review a [Rule] 12(b)(5) motion to dismiss de novo and apply the same standards as the trial court."  *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.  In doing so, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff; however, we are not required to accept as true bare legal conclusions.  *Id.*

¶ 41    A plaintiff must allege a plausible claim for relief to survive a Rule 12(b)(5) motion to dismiss.  *Scott v. Scott,* 2018 COA 25, ¶ 19; *see also Warne v. Hall*, 2016 CO 50, ¶ 24 (adopting plausibility standard in Colorado).  Whether a complaint states a plausible

claim for relief is context-dependent and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible when its factual allegations raise a right to relief above the speculative level, allowing us to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Woodall v. Godfrey*, 2024 COA 42, ¶ 7.

¶ 42 While motions to dismiss under Rule 12(b)(5) are generally disfavored, we will uphold a court's grant of a motion to dismiss when the plaintiff's factual allegations don't, as a matter of law, support the claim for relief. *Id.* at ¶ 9.

¶ 43 We also review de novo a court's order granting judgment on the pleadings under Rule 12(c). *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 16. In doing so, we "must construe the allegations in the pleadings strictly against the movant [and] . . . consider the allegations of the opposing parties' pleadings as true." *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.*, 200 P.3d 1133, 1135 (Colo. App. 2008); *see also BSLNI, Inc. v. Russ T. Diamonds, Inc.*, 2012 COA 214, ¶ 13 (noting that the standard used to resolve

a motion for judgment on the pleadings is consistent with the standard used to resolve a Rule 12(b)(5) motion to dismiss).

¶ 44    To establish a legal malpractice claim based on negligence, a plaintiff must prove that (1) the attorney owed a duty of care to the plaintiff; (2) the attorney breached that duty; (3) the breach caused an injury to the plaintiff; and (4) damages resulted. *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶¶ 27, 31.

¶ 45    Establishing whether an attorney's negligence caused a plaintiff's injury requires determining whether the alleged malpractice was the actual cause (cause in fact) and legal cause (proximate cause) of the plaintiff's injury. *Id.* at ¶ 31. The parties' arguments focus solely on the cause in fact determination necessary to prove malpractice.

¶ 46    Cause in fact is measured by the "but for" test — that is, "whether, but for the alleged negligence, the harm would not have occurred." *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011) (citation omitted). To establish causation in fact in cases such as this where a plaintiff claims their attorney's malpractice prevented them from prevailing in a lawsuit, a plaintiff

must prove a case within a case. *LeHouillier v. Gallegos*, 2019 CO 8, ¶ 19. In other words, to succeed on a malpractice claim, a plaintiff must prove that the claim underlying the malpractice action would have been successful but for the attorney's negligence. *Id.*; *Boulders at Escalante*, ¶ 33.

¶ 47     When, as here, a defendant moves under Rule 12(b)(5) to dismiss a malpractice claim that requires the plaintiff to prove their case within a case, the plaintiff's factual allegations, accepted as true, must plausibly support the plaintiff's malpractice claims *and* the claims in the complaint from which the plaintiff's malpractice claims arose to survive dismissal. *See Froid v. Zacheis*, 2021 COA 74, ¶¶ 36-38 (noting that to defeat a Rule 12(b)(5) motion to dismiss, plaintiffs need only plausibly allege the causation element of malpractice, but they must prove their case within a case by a preponderance of the evidence at trial).

## B.     Analysis

¶ 48     To survive the motions to dismiss, the neighbors needed to *plausibly allege* — but not conclusively prove — that they would have prevailed in the fire action but for the defendant lawyers' negligence. Accepting the neighbors' factual allegations as true, we

conclude that the neighbors' amended malpractice complaint plausibly alleges that (1) the Hazlets owed them a legal duty, such that they could have prevailed in the fire action; and (2) but for the defendant lawyers' actions, their claims in the fire action wouldn't have been dismissed.

1. The Neighbors Plausibly Alleged that the Hazlets Owed Them a Duty

¶ 49    To have succeeded in the fire action, the neighbors were required to establish in relevant part that the Hazlets breached a legal duty owed to them. *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992). "Generally, every individual owes a duty of ordinary care not to create an unreasonable risk of harm to others." *Laughman v. Girtakovskis*, 2015 COA 143, ¶ 11. And landowners have a duty to prevent activities and conditions on their land from creating an unreasonable risk of harm to others. *State, Dep't of Health v. The Mill*, 887 P.2d 993, 1002 (Colo. 1994).

¶ 50    The defendant lawyers argue that the neighbors' ability to prove their case within a case was doomed because the neighbors' fire action claims were based solely on the Hazlets' alleged nonfeasance, and the Hazlets and the neighbors didn't have a

24

"special relationship" that established a legal duty. *See Univ. of Denv. v. Whitlock*, 744 P.2d 54, 57-58 (Colo. 1987) (noting that in negligence cases alleging nonfeasance, Colorado has only recognized a legal duty of care for the following relationships: carrier/passenger, innkeeper/guest, possessor of land/invited entrant, employer/employee, parent/child, and hospital/patient).

¶ 51 We disagree that the neighbors' complaint solely contained allegations about the Hazlets' nonfeasance.

¶ 52 The neighbors made the following general allegations about the circumstances related to the fire:

- In March 2018, a fire began near a shooting range on the Hazlets' property that spread onto the neighbors' property.

- The area on and around the Hazlets' property contained extremely dry vegetation, and it was windy on the date of the fire.

- The Hazlets "knew or should have known" that there were "dry, windy and drought conditions" existing on the date of the fire.

The neighbors also alleged the following affirmative actions by the Hazlets:

- The Hazlets were each responsible for the operation of the shooting range located on their property and had conducted activities on their property for years.

- James and Monte granted Robert the authority to operate and control access to the shooting range.

- Robert was acting within the scope of the authority James and Monte granted to him at the time of the fire.

- The Hazlets each allowed individuals to discharge firearms at the shooting range on their property.

¶ 53    To decide the existence and scope of a duty based on affirmative actions, courts consider the following nonexclusive factors: the risk involved, the foreseeability and likelihood of injury, the "social utility" of the actor's conduct, the magnitude of the burden of protecting against injury, and the consequences of the burden on the actor.  *Id.* at 57.

¶ 54    Accepting as true the neighbors' allegations, viewing them in the light most favorable to the neighbors, and drawing all inferences in the neighbors' favor, we conclude that the neighbors have plausibly alleged that (1) the Hazlets and the neighbors were adjoining property owners; (2) the Hazlets owned and operated a

shooting range on their land for an extended period of time; (3) the portion of the Hazlets' property that had been used as a shooting range was in operation on the date of the fire; (4) on the date of the fire, the Hazlets allowed and authorized several individuals to engage in firing weapons despite being aware that vegetation on and around their property was extremely dry and weather conditions were windy; and (5) a fire started in the area of the shooting range and spread onto the neighbors' property after the Hazlets allowed and authorized the individuals to engage in shooting.

¶ 55    Certainly, there is at least some risk of injury that arises from shooting weapons, *see generally, Hilberg v. F.W. Woolworth Co.*, 761 P.2d 236, 241 (Colo. App. 1988) (noting that it's common knowledge that guns are potentially dangerous), *overruled on other grounds by*, *Casebolt*, 829 P.2d at 360, and defendants need not foresee the exact nature or extent of harm to another to be held liable for their negligent actions, *Garcia v. Colo. Cab Co.*, 2023 CO 56, ¶ 22 (foreseeability is based on common sense perceptions of the risks created by various conditions and circumstances). *See also Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 48 (Colo. 1987) (foreseeable injury "includes whatever is likely enough in the setting of modern life that

27

a reasonably thoughtful person would take account of it in guiding practical conduct." (quoting 3 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *The Law of Torts* § 18.2, at 658-59 (2d ed. 1986))).

¶ 56    Allowing people to shoot weapons on private land arguably has limited social utility. Additionally, because the Hazlets admitted that they didn't use the shooting range as a commercial business, disallowing people to use their property as a shooting range would likely minimally burden the Hazlets while preventing risk of significant injury to nearby property owners. And given the dry and windy conditions when the Hazlets allowed shooting on their property, a brush fire was within the realm of likely and foreseeable consequences.

¶ 57    Thus, the neighbors have plausibly alleged that the Hazlets owed them a legal duty because the factual allegations in the amended complaint are sufficiently detailed to allow us to reasonably infer that the Hazlets engaged in activities on their land that created an unreasonable risk of harm to the neighbors.

### 2. The Neighbors Plausibly Alleged They Could Have Prevailed in the Fire Action "But For" the Defendant Lawyers' Negligent Actions

¶ 58    In support of their assertion that the defendant lawyers' negligent representation caused them to lose the fire action, the neighbors alleged the following in their amended malpractice complaint:

- The LeRoux and Geigle lawyers filed a lawsuit that named James and Monte as defendants, asserting that they negligently owned and operated a private firing range that ultimately led to a fire that spread to the neighbors' property, causing the neighbors damages.

- James's and Monte's negligent actions included allowing Robert to manage and operate the firing range under unsafe conditions.

- Robert died before the lawsuit was filed. The LeRoux and Geigle lawyers later named Robert's estate as a defendant.

- The LeRoux and Geigle lawyers asked the court to appoint a special administrator for Robert's estate.

- The probate court appointed a special administrator but expressly limited the special administrator's ability to be sued on behalf of Robert's estate.

- The LeRoux and Geigle lawyers withdrew and were succeeded by the Lampert lawyers.

- None of the defendant lawyers asked the probate court to appoint a personal representative or other person who could be sued on behalf of Robert's estate and the probate court didn't otherwise appoint any such person.

- The Lampert lawyers asked the fire action court to dismiss the claims against Robert's estate. The court dismissed the claims against Robert's estate as requested.

- The Hazlets moved for dismissal of or summary judgment on the neighbors' claims against them, arguing that they didn't owe the neighbors a duty and that the neighbors couldn't simultaneously assert direct liability and vicarious liability claims.

- The LeRoux and Geigle lawyers withdrew from the case after that motion was filed, and the Lampert lawyers joined the case while that motion was pending.

- Despite being placed on notice by that motion that James's and Monte's admission of vicarious liability for Robert's conduct conflicted with the neighbors' ability to pursue direct negligence claims against James and Monte, none of the defendant lawyers asked to withdraw the neighbors' vicarious liability claims.

- The court entered summary judgment in favor of James and Monte on the neighbors' direct negligence and vicarious liability claims.

¶ 59    Accepting these allegations as true, we can reasonably infer that if the LeRoux and Geigle lawyers had timely sought to have a personal representative appointed for Robert's estate, the Lampert lawyers wouldn't have asked the fire action court to dismiss Robert's estate for "procedural deficiencies."  In turn, if the Lampert lawyers hadn't asked to dismiss Robert's estate — a request they made without having secured a personal representative for Robert's estate, several months after the deadline to bring claims against his estate had passed — the neighbors' direct negligence claim against Robert's estate would have survived.  And because we've concluded that the neighbors plausibly alleged that the Hazlets owed them a

31

duty of care, the neighbors' direct negligence claim against Robert was a plausible claim for relief. Thus, as pleaded in the complaint, but for the defendant lawyers' actions, the neighbors wouldn't have lost their only viable claim against Robert's estate.

¶ 60 Similarly, the neighbors' direct negligence claims against James and Monte were viable because the neighbors plausibly alleged that the Hazlets owed them a duty of care. And the neighbors could have pursued their plausible direct negligence claims against James and Monte but for the defendant lawyers' failure to withdraw the alternative vicarious liability claims. *See Brown v. Long Romero*, 2021 CO 67, ¶¶ 28-29 (holding that a plaintiff may not bring both a direct negligence claim and a vicarious liability claim against a defendant — regardless of whether the defendant acknowledges vicarious liability — because bringing both claims is redundant).

¶ 61 The neighbors have plausibly alleged that the Hazlets owed them a duty, such that they could potentially prove their case within a case at a trial for legal malpractice, and they plausibly alleged that but for the defendant lawyers' actions, their claims in the fire action wouldn't have been dismissed. *See Froid*, ¶¶ 36-38.

Accordingly, we reverse the district court's judgments dismissing the neighbors' malpractice claims against the defendant lawyers. In doing so, we express no opinion on the ultimate success of those claims on remand.

## IV.   The Parties' Requests for Fees and Costs

¶ 62    All parties request their attorney fees and costs related to the defendant lawyers' motion to dismiss the appeal for lack of appellate jurisdiction. The neighbors seek costs and fees against the defendant lawyers under section 13-17-102, C.R.S. 2025; the defendant lawyers seek their costs and fees against the neighbors under C.A.R. 38(a) and (b).

¶ 63    Section 13-17-102(4) authorizes a court to award attorney fees against a party who brought an action lacking substantial justification. Similarly, we are authorized to impose sanctions under C.A.R. 38 "in clear cases" where a proponent hasn't presented a rational argument based on the evidence or law in support of their claims, or when an appeal is prosecuted for the sole purpose of harassment or delay. *Mission Denv. Co. v. Pierson*, 674 P.2d 363, 366 (Colo. 1984). While we weren't persuaded by the defendant lawyers' arguments, they didn't lack substantial

justification. And because we have concluded that we have jurisdiction over this appeal, we decline to sanction the neighbors. Accordingly, we deny the parties' requests for attorney fees related to the defendant lawyers' motion to dismiss the appeal. However, the neighbors are entitled to their appellate costs under C.A.R. 39(a)(3), which provides, "[I]f a judgment is reversed, costs are taxed against the appellee." The neighbors may pursue those costs in the district court by following the procedure set forth in C.A.R. 39(c)(2).

## V. Disposition

¶ 64 The judgment is reversed, and the case is remanded to the district court with instructions to reinstate the neighbors' amended malpractice complaint.

JUDGE KUHN and JUDGE BERNARD concur.